**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| VERSIE C. McCLAY CHATMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO.: 2:21-cv-000397-JEM |
| | ) | |
| CRISIS CENTER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CRISIS CENTER, INC.'S**
**ANSWER AND AFFIRMATIVE DEFENSES TO**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

The Defendant, Crisis Center, Inc. ("Defendant Crisis Center"), by and through its undersigned counsel, states the following for its Answer to the *Plaintiff's Second Amended Complaint to Correct Deficiencies Pursuant to Rule 29 U.S.C. §§ 621 to 634, Rule 42 U.S.C. §§ 2000e to 2000e-17, Rule 42 U.S.C. § 12203(a), (b), (c)* ("*Second Amended Complaint*"), as subsequently affected by the Court's August 11, 2022 *Opinion and Order* [Doc. No. 40], which dismissed Counts III and IV.

<u>JURISDICTION</u>

1. This court has jurisdiction over this matter pursuant to Rule 28, U.S.C. 1331, which provides district court's jurisdiction over civil actions arising under the United States Constitution.

<u>RESPONSE</u>: Although the Plaintiff's citation and description of federal-question jurisdiction in paragraph 1 of her Second Amended Complaint is inaccurate, Defendant Crisis Center does not challenge this Court's exercise of subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. 1331.

2.      This court has personal jurisdiction over the Crisis Center, Inc. managements corporation, business, nonprofit because the place of business is located in this state.

RESPONSE: Although paragraph 2 of the Plaintiff's Second Amended Complaint is substantially incoherent, including without limitation because of the disconnected "managements corporation, business nonprofit" language, Defendant Crisis Center does not challenge the Court's exercise of personal jurisdiction over it in this action.

3.      Venue is proper pursuant to Rule 28 U.S.C. 139(b) because the events giving rise to the allegations in this complaint occurred in this district.

RESPONSE: Although paragraph 3 of the Plaintiff's Second Amended Complaint cites the wrong statute, and substantially all the "events giving rise to the allegations in [the Plaintiff's Second Amended] complaint" did not occur anywhere other than in the Plaintiff's own mind, Defendant Crisis Center agrees that the Northern District of Indiana is a proper venue for this action pursuant to 28 U.S.C. 1391(b).

FACTUAL ALLEGATIONS

1.      Crisis Center, Inc. is located at 101 N. Montgomery, Gary, Indiana 46403.

RESPONSE: Defendant Crisis Center admits the factual allegation(s) and averment(s) in paragraph 1 of the Plaintiff's Second Amended Complaint.

2.      Plaintiff, was employed with Crisis Center, Inc. from June 19, 2019 until April 26, 2021. Plaintiff was interviewed, by Crisis Center, Inc. Manager, Felicia L. Evans, an African American. Plaintiff was hired by Crisis Center, Inc. as a part time Residential Staff

Worker. Plaintiff was also a driver as well as a teacher in the e-learning classroom beginning in September, 2020, while working at Crisis Center, Inc. Plaintiff's work performances were stellar, and Plaintiff never received any warnings or write-ups for the duration of Plaintiff's employment at Crisis Center, Inc. Plaintiffs' [sic] evaluation stated "fully achieves expectations".

RESPONSE: With regard to paragraph 2 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that the Plaintiff "was employed with Crisis Center, Inc. from June 19, 2019 until April 26, 2021" (because both the stated start and end dates for her employment with Defendant Crisis Center are inaccurate), (b) admits that the Plaintiff was interviewed and hired by Felicia Evans as a part-time Residential Staff Worker and that she subsequently worked in the other described capacities, (c) admits that a July 24, 2020 Performance Review Summary assessed her as "Fully Achieves Expectations" on each of five criteria, *i.e.*, Accomplishments, Service & Relationships, Accountability & Dependability, Adaptability & Flexibility, and Decision Making & Problem Solving, which resulted in a overall assessment score of 15 of 25 possible points because "Fully Achieves Expectations" was the median option reflecting 3 of 5 possible points, (d) denies that the Plaintiff's work performances "were stellar", and (e) denies that the Plaintiff "never received any warnings or write-ups for the duration of [her] employment" with Defendant Crisis Center because, as the Plaintiff knows or should know, in addition to verbal warnings during her employment term she received a formal write-up in February 2021 for failing to properly monitor clients.

3.     Plaintiff informed Crisis Center, Inc., Manager Felicia L. Evans at the initial interview that Plaintiff could only work part time for a certain number of hours because Plaintiff was disabled and receiving social security disability benefits.

RESPONSE:   Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 3 of the Plaintiff's Second Amended Complaint.

4.     While working at the Crisis Center, Inc., Plaintiff was put on the schedule for hours that exceeded Plaintiff's part time hours. Plaintiff sent Plaintiff's availability for the upcoming week. Oftimes [sic] while working at the Crisis Center, Inc., Plaintiffs [sic] stated availability would not adhere to it.

RESPONSE: With regard to paragraph 4 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that Plaintiff ever worked full-time hours, (b) admits that, pursuant to the policy, custom, and/or practice with regard to scheduling, the Plaintiff, as a part-time employee, would provide Defendant Crisis Center with information regarding her work availability for the upcoming week, and (c) observes that the last "sentence" in that paragraph is substantially incoherent to the point where Defendant Crisis Center cannot adequately assess the truth of the assertion and thus denies it.

5.     In addition, Crisis Center, Inc. regulated [sic] Plaintiff to a classroom by abruptly putting Plaintiff on Crisis Center, Inc., work schedule. Crisis Center, Inc. did not allow Plaintiff to take breaks, and Crisis Center, Inc. gave Plaintiff full time hours working with the children in e-learning class as well. Ms. Carolyn, another older worker who worked in maintenance had to come to the aid of Plaintiff when Plaintiff was hollering for help, and to

allow Plaintiff to go to the restroom. Plaintiff was left alone in a class room with both boys and girls who exhibited threatening and aggressive behavior.

RESPONSE: With regard to paragraph 5 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center acknowledges only that, during the period of time when the Plaintiff worked in the e-learning classroom, she was responsible for clients who had exhibited threatening and aggressive behaviors, which should not have been surprising to the Plaintiff given the nature of Defendant Crisis Center's mission and its clients, which were both well-known to the Plaintiff when she applied for and accepted a position with Defendant Crisis Center. Defendant Crisis Center denies all other factual allegation(s) and/or averment(s) in this paragraph.

6.     In Plaintiff's second year while working at the Crisis Center, Inc., Plaintiff was put on the schedule so much that Plaintiff's part time salary nearly doubled in Plaintiffs' [sic] second year. As a result Plaintiff now has to pay back $200.00 monthly, beginning in 2021 and for the next four years to social security.

RESPONSE: Defendant Crisis Center lacks sufficient knowledge and information to form a belief as to the factual allegation(s) and/or averment(s) in paragraph 6 of the Plaintiff's Second Amended Complaint.

7.     Crisis Center, Inc. was repeatedly informed by Plaintiff that Plaintiff could not go over the social security disability income limits.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 7 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that on

more than one occasion the Plaintiff sent a text message and/or electronic-mail message to Felicia Evans in which she mentioned that she drew Social Security disability and was subject to some undefined "cap" on the amount she could work and/or earn, but provided no  specific information regarding the income limitations to which she was allegedly subject.

8.      Crisis Center Inc. management Felicia L. Evans informed Plaintiff that another employee was working part time because she was also receiving social security benefits as well, and had only a certain amount of hours she could work. Plaintiff learned after being hired that the other employee was named Ms. Marcel. Ms. Marcel was younger than Plaintiff. Ms. Marcel's request not to go over her social security income guidelines were [sic] adhered to by Crisis Center, Inc. On the other hand, Crisis Center, Inc. Felicia L. Evans stated in the EEOC fact finding meeting stated [sic] that she was unaware of Ms. Marcels [sic] work schedule limitations due to social security disability.

RESPONSE: With regard to paragraph 8 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that Felicia Evans informed Plaintiff that another employee was working part time, and could only work a certain number of hours, because she was receiving social-security benefits, (b) lacks sufficient knowledge or information to form a belief as to the Plaintiff's assertion that she subsequently learned information about the other individual's identify, (c) admits that the employee to whom the Plaintiff refers was younger than the Plaintiff, but is also in her sixties, (d) admits that it has made every effort to accommodate the other employee's request to limit her work hours as she, unlike the Plaintiff, had requested, and (e) denies that Felicia Evans made any statement at an EEOC Fact-Finding

Conference (hereinafter "FFC") in which she communicated the substance of the statement that the Plaintiff attributes to her in this paragraph..

9.     Crisis Center, Inc., would elicit dates and times of availability from staff, and then draft the schedule accordingly.

RESPONSE: With regard to paragraph 9 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that, to prepare the work schedule, it asked the part-time employees to provide their availability so that a schedule could be prepared with part-time employees covering the slots not filled by a smaller number of full-time employees, whose work schedules were typically more consistent from week to week.

10.     Prior to April, 2021, when Crisis Center, Inc., management composed the schedule, and Plaintiff was not able to adhere to times not requested for African American residential staff workers, and/or was unable to come in for call offs, hospital stays, etc.; Plaintiff was never taken off the schedule or abruptly put on backup, as a result.

RESPONSE: Paragraph 10 of the Plaintiff's Second Amended Complaint is substantially incoherent as written and Defendant Crisis Center cannot form a belief as to the truth of the allegation(s) and/or averment(s) in it.

11.     Plaintiff would routinely remind Crisis Center, Inc., management Felicia L. Evans via text messages, word of mouth, and email of Plaintiff's social security disability income limits. Plaintiff continually expressed concerns about not wanting to lose Plaintiff's

social security disability benefits because of being put on the schedule for excessive hours by Crisis Center, Inc.

RESPONSE: Defendant Crisis Center denies the allegation(s) and/or averment(s) in paragraph 11 of the Plaintiff's Second Amended Complaint and incorporates its above answer to paragraph 7.

12.     Prior to April, 2021, when Plaintiff stated to Crisis Center, Inc., that Plaintiff could not work hours asked at times Plaintiff was not taken off the schedule abruptly or put on back up. Prior to April, 2021, Plaintiff was not replaced on any shift after not being able to come in. Prior to April, 2021, Crisis Center had no back up schedules.

RESPONSE: With regard to paragraph 12 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that it ever – before or after April 2021 – "abruptly" removed the Plaintiff from the schedule or scheduled her as back-up or replaced her on any shift in response to the Plaintiff's declining work requests, and (b) denies the allegation that it "had no back up schedules" prior to April 2021.

13.     At one point Crisis Center, Inc. manager Felicia L. Evans stated with regards to Plaintiffs' [sic] social security disability benefits, after Plaintiff's pleas to stop the excessive hours was [sic] "we are going to deal with social security and pay back what we have to".

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 13 of the Plaintiff's Second Amended Complaint.

14.     Crisis Center, Inc. manager Felicia L. Evans went on to state that "we are so short staffed, especially with this COVID." Majority of the staff went on to work excessive hours to try and help Crisis Center, Inc. out of a pinch. Oftimes [sic] staff hours would exceed a 40 hour work week, but these workers were in agreement with the excessive hours, and were not disabled and receiving social security disability, with the exception of Ms. Marcel, all of which were younger than Plaintiff. At one point Crisis Center Inc. manager Felicia L. Evans stated with regards to Plaintiffs' [sic] social security disability benefits, after Plaintiff's pleas to stop the excessive hours was [sic] "we are going to deal with social security and pay back what we have to".

RESPONSE: With regard to paragraph 14 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) lacks sufficient knowledge and/or information to form a belief as to whether Felicia Evans ever made the specific statement attributed to her, but acknowledges that there were times, especially during COVID, when it was short-staffed, (b) denies that a majority of its employees worked "excessive hours" to assist it or that staff hours would "oftimes" exceed 40-hour work weeks, (c) denies that all of its employees were younger than the Plaintiff, and (d) refers to its response to paragraph 13 with regard to the unnecessary and duplicative inaccurate attribution of a statement to Felicia Evans.

15.     In addition, Plaintiff continued to send Crisis Center, Inc. emails, text messages, and phone conversations repeatedly in which Plaintiff stated that Plaintiff could not work full time hours Plaintiff reiterated that she was on social security disability, and did not want to lose her disability benefits.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 15 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center incorporates its above answer to paragraph 7.

16.     At one point when Plaintiff told Crisis Center Manager, Felicia L. Evans that Plaintiff could not work these full time hours, Crisis Center Manager, Felicia L. Evans stated: "Just wait until things change!", as Crisis Center, Inc. was going through another transition from Campagna to a new administration. Crisis Center Manager, Felicia L. Evans repeatedly stated: "I am going to fire you and get full time people. I need full time people!"

RESPONSE: Defendant Crisis Center denies the allegation(s) and/or averment(s) in paragraph 16 of the Plaintiff's Second Amended Complaint.

17.     As a result of excessive hours on April 22, 2021, Plaintiff received documentation from the Social Security Office stating Plaintiff's benefits would stop as a result of working full time.

RESPONSE: Defendant Crisis Center lacks sufficient knowledge and/or information to form a belief as to the truth of the allegation(s) and/or averment(s) in paragraph 17 of the Plaintiff's Second Amended Complaint.

18.     After receiving the letter from Social Security, Plaintiff wrote a letter (dated April 2, 2021) and hand delivered it to Crisis Center, Inc., Manager, Athena Soleim, a Caucasian American on April 8, 2021. Plaintiff also gave a copy to Crisis Center, Inc., Secretary, Meara Dowell, a Caucasian American, Crisis Center, Inc., Executive Director Nikki

Wieglos, a Caucasian American, and Crisis Center, Inc., Director of Finance & Administration, Margaret Pruzin, a Caucasian American.

RESPONSE: With regard to paragraph 18 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that on or about April 8, 2021, the Plaintiff delivered copies of backdated correspondence to the listed individuals, all of whom, on information and belief, identify as Caucasians – as well as to Felicia Evans, who is a Black African-American. Defendant Crisis Center denies that that event could possibly have happened after the Plaintiff received the "the letter from Social Security," when the only antecedent for that language is the allegation in the preceding paragraph that she received that correspondence weeks later.

19.     After delivering this letter this lead [sic] to Plaintiff being subjected to increased scrutiny, retaliated against and taken off the schedule.

RESPONSE: Defendant Crisis Center denies the allegation(s) and/or averment(s) in paragraph 19 of the Plaintiff's Second Amended Complaint.

20.     On Sunday, April 25, 2021, Plaintiff received a call from Jennifer Moser, a Caucasian American who was a shift supervisor to come in for a few hours to relieve her at the hospital, and Plaintiff told Jennifer that Plaintiff would not come in. By this time, Plaintiff was well over her limited part time hours.

RESPONSE: With regard to paragraph 20 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that Jennifer Moser, who, on information and belief, identifies as Caucasian, contacted the Plaintiff by telephone on Sunday, April 25, 2021

to request that the Plaintiff relieve her at the hospital and the Plaintiff declined the request, (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the allegation(s) and/or averment(s) that Plaintiff was "well over her limited part-time hours" for the applicable time period at the time of that contact.

21.     Then again on (the same day), on April 25, 2021 at 11:13 p.m. Plaintiff received a text message from Crisis Center, Inc., Manager, Athena Soleim, a Caucasian American. Crisis Center, Inc., Manager Athena Soleim, as well as Plaintiff know that a hospital stay can expand over two shifts until they could find someone to relieve you. This would again have put Plaintiff even more over the part time hours with Social Security disability for April.

<u>RESPONSE</u>: With regard to paragraph 21 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits only that Athena Soleim, who identifies as Caucasian, sent the Plaintiff a text message on April 25, 2021 on or about 11:13 p.m., (b) admits that Athena Soleim was aware that a hospital stay can last longer than a work shift and supposes that the Plaintiff was similarly aware of that fact, and (c) still (see Response to paragraph 20) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's assertion that an undefined "this" would "again have put Plaintiff even more over the part time hours with Social Security disability for April."

22.     Even after Plaintiff stated she could not come in, Crisis Center, Inc., management Athena Soleim sent Plaintiff the following text message.

23.     Crisis Center, Inc., Manager Athena Soleim      Can you come in to work midnights?

Plaintiff:        When?

Crisis Center, Inc., Manager Athena Soleim:        Tonight.

Can you sit with a girl in the hospital and currently and relieve jen?

**She's there now and we don't know if she will be admitted.**

Plaintiff:        Not tonight. I wish I had of known earlier. Jennifer' called me earlier for the same thing at the last minute of my event. . . **but she said a couple of hours**. I wasn't able to do it at the last minute today because I made plans based on your schedule. I had my hours planned for the day into the night because I was off. It is too late for me to rearrange anything now. I am sorry.  I usually base my life off of my hours. So when I am off I make plans on my off days and the hours that I am available. I am so sorry"

Crisis Center, Inc., Manager Athena Soleim: We had you listed as back up on the schedule though for this reason. I thought you would be aware of that.

Plaintiff:        Back up. This is what you said: "Please see schedule for next week for the Crisis Center. Due to current census, our schedule reflects our current needs. Should we get more clients, we will be able to offer more shifts. Please note if you are back up, we may ask you to help out.  We will do our best to notify asap so you can be prepared for that shift. Our needs fluctuate based on census."

COMBINED RESPONSE: Assuming that "the following text message" in paragraph 22 of the Plaintiff's Second Amended Complaint refers to the text-message thread reproduced in paragraph 23 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center denies that the language of paragraph 23 accurately reflects the April 25, 2021 text-message thread verbatim and further observes that the "[e]ven after Plaintiff stated <u>she could not come in</u>"

(emphasis added) language lacks any clear antecedent because that is not the manner in which the Plaintiff described declining the relief request in paragraph 20 of the Plaintiff's Complaint.

24.     Crisis Center, Inc. hired Plaintiff as part-time. Crisis Center, Inc. never informed Plaintiff about a backup status when hired. Since Plaintiff began employment, at Crisis Center, Inc., *no one* was on a backup status, as can be seen on Crisis Center, Inc., schedules dating back to 2019.

RESPONSE: With regard to paragraph 24 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits it hired Plaintiff as a part-time employee, and (b) lacks sufficient knowledge and information to form a belief as to whether on-call/back-up status was specifically discussed with Plaintiff at the time of her hiring or whether employees may have been assigned to on-call/back-up status for particular shifts without notation of same on the weekly schedules themselves, as had been the past practice of Defendant Crisis Center.

25.     The Crisis Center, Inc., manager Athena Soleim referenced backup, and asked Plaintiff to come in, and also stated that "we will do our best to notify you asap so you can be prepared for that shift." Suffice to say, Jennifer called Plaintiff earlier to replace her at the hospital, and Jennifer stated it was for a couple of hours. When Plaintiff was not able to come in, then Crisis Center, Inc., manager Athena Soleim texted Plaintiff at 11:13 pm and stated: "She's there now and we don't know if she will be admitted." Crisis Center, Inc., Manager also stated that Plaintiff was listed as backup for this reason.

RESPONSE: Paragraph 25 of Plaintiff's Second Amended Complaint employs a stream-of-conscious organization repetitive of previous allegation(s) and/or averment(s) that

renders it substantially incoherent. Making its best effort to decipher and address the allegation(s), Defendant Crisis Center (a) admits that, in the April 25, 2021 text-message thread, Athena Soleim "referenced backup[,]" stated that the Plaintiff had been "listed as back up on the schedule though for this reason[,]" and also stated "She's there now and we don't know if she will be admitted[,]" (b) admits that, in an electronic-mail message and/or text message accompanying the distribution of the original schedule for the week of April 26, 2022, Athena Soleim had stated "we will do our best to notify you asap so you can be prepared for that shift[,]" and (c) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's allegation(s) about the specific discussion of the timeline during the earlier April 25, 2021 telephone contact between Jennifer Moser and the Plaintiff.

26.     Plaintiff was not hired for backup. Crisis Center, Inc. manager Athena Soleim put Plaintiff on backup and then stated: "I though you would be aware of that". Crisis Center, Inc. had no policy on backup in the handbook.

RESPONSE: With regard to paragraph 26 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that its Employee Handbook did not contain any written policy addressing on-call/back-up status and that the original schedule for the week of April 26, 2021 assigned the Plaintiff to back-up status on two shifts, but (b) denies that the easily understood concept was outside the scope of the Plaintiff's part-time employment and that Athena Soleim stated (or texted) the matter in quotation marks, which, again fails to reproduce the actual message verbatim.

27.     In the EEOC fact finding conference when EEOC questioned Crisis Center, Inc. manager Athena Soleim and asked if she talked with Crisis Center, Inc. management about this new backup policy?, Crisis Center, Inc., manager stated "No. I was just trying something." The call for backup was not for a shift, it was to relieve staff at the hospital. Shifts are usually 8 hours, but Crisis Center, Inc. manager Athena Soleim had no idea how long the stay at the hospital would be, as she stated, "She's there now and we don't know if she will be admitted."

RESPONSE: With regard to paragraph 27 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) lacks sufficient knowledge and/or information as to whether Athena Soleim – who is the Program Director at the Crisis Center – was asked during the EEOC FFC whether she had spoken with other management about a "new backup policy," but acknowledges that Ms. Soleim advised that she was experimenting with schedule-related solutions to ensure staffing, (b) acknowledges that its employees are often scheduled for eight-hour shifts but denies that there is any merit whatsoever to the Plaintiff's disingenuous hair-splitting with regard to whether her employer's request for assistance on the evening of April 25, 2021/morning of April 26, 2021 was actually related to the Plaintiff's back-up status as previously introduced and/or described in connection with a "shift," and (c) admits (again) that, in the April 25, 2021 text-message thread, Athena Soleim stated "She's there now and we don't know if she will be admitted[,]" from which statement Defendant Crisis Center acknowledges it is a reasonable inference that Ms. Soleim could not state with certainty how long the hospital-relief shift might last.

28.     Plaintiff was on social security disability and could only work a certain number of hours.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 28 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits, on information and belief, that Plaintiff is a Social Security Disability beneficiary and understands that there are income limitations associated with that status, but (b) denies that the Plaintiff "could only work a certain number of hours."


29.     Suffice it to say that in Plaintiff's letter cc'ed to Crisis Center Inc., regarding the excessive hours. Crisis Center, Inc., Director Margaret Pruzin stated "You chose to work all the days scheduled and there are no write ups for failing to show up for work."

RESPONSE: Because paragraph 29 of the Plaintiff's Second Amended Complaint is substantially incoherent as written, including, without limitation because the first "sentence" is a fragment and the reference point for "Plaintiff's letter cc'ed to Crisis Center Inc., regarding the excessive hours" is unclear, Defendant Crisis Center lacks sufficient knowledge and/or information to form a belief as to the truth of the allegations. In effort to meet the substance of the Plaintiff's allegations, Defendant Crisis Center acknowledges that April 14, 2021 electronic mail correspondence from Margaret Pruzin to the Plaintiff contains the quoted language, but cannot discern Plaintiff's intended meaning of the phrase "[s]uffice it to say[.]"


30.     Crisis Center, Inc., Director Margaret Pruzin stated: held [sic] "If you had given us legal documentation or a Dr. restrictions, we would have limited the amount of hours you worked." However, an employer is only required to provide work-related accommodations if you disclose your ability to the appropriate individuals.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 30 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that Margaret Pruzin's April 14, 2021 electronic-mail correspondence to the Plaintiff contains the language reflected in quotation marks, and (b) states that the remainder of that paragraph appears to be an assertion of law regarding an employer's rights and/or duties to which the Federal Rules of Civil Procedure require no response.


31.    Plaintiff did not need any work-related accommodations, Plaintiff needed to work part time according to Social Security disability income guidelines, and Plaintiff expressed Plaintiff's social security disability and hours with Crisis Center, Inc., manager Felicia L. Evans over and over.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 31 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits, on information and belief, that the Plaintiff "did not need any work-related accommodations[,]" (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's assertion regarding her needs as to working "part time according to Social Security disability guidelines," and (c) denies that Plaintiff expressed "over and over" to Felicia Evans whatever she intends to say with the vague reference to "social security disability and hours," and incorporates its answer to paragraph 7 above in regard to the substance of the Plaintiff's allegations about her communications with Defendant Crisis Center regarding limitations as a result of her participation in the Social Security disability program.

32.     In the Crisis Center, Inc., Employee Handbook it states under Pre-Employment Required Documents that a "Physical exam and release" is required. Plaintiff was not asked for a "Physical exam and release" in the initial interview nor during the course of employment. Nor was Plaintiff asked per Crisis Center, Inc., policy under Post-offer Employment for "written clearance by a physician after a physical exam".

RESPONSE: With regard to the allegation(s) and averment(s) in paragraph 32 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that its employees are required to complete a physical exam and secure a release prior to employment, and (b) denies the remaining contentions and observes that, notwithstanding the Plaintiff's sworn declaration to the contrary, her employment file contains documentation reflecting that she completed such an physical examination on or about June 10, 2019.


33.     The Crisis Center, Inc., manager Felicia L. Evans did not specify that legal documentation or a Dr. restriction's [sic] was required for social security disability during or after the interview process. In addition, no staff was required to take any physical or submit to any clearance by a physician before employment. No staff was terminated within seven days of employment for not doing so contrary to the Crisis Center, Inc. handbook.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 33 of Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) states only that nothing about Social Security Disability was discussed by either party during the Plaintiff's interview process, and (b) denies that "no staff was required to take any physical or submit to any clearance by a physician before employment," and (c) further states that it is unaware of any

staff – including the Plaintiff -- failing or refusing to fulfill the physical-examination employment requirement.

34.     The Crisis Center, Inc. employee handbook was stamped "draft"; however the handbook was handed out to the staff in a staff meeting by Mera Dowell, a Caucasian American as a mockup of the original.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 34 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that former human resources employee Mera Dowell, who, on information and belief identifies as Caucasian, distributed copies of an Employee Handbook that were stamped "draft" pending attorney review and revisions, and (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's contention that the documents circulated were "a mockup of the original" because it cannot discern the Plaintiff's intended meaning from the words she uses.

35.     Up to Plaintiff's last day, no Crisis Center, Inc., employee handbook was given to staff as a non-draft version. No email was sent to staff relating to a non-draft version of the Crisis Center, Inc. employee handbook being available.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 35 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center states that its Employee Handbook was finalized in October, 2021.

36.     Prior to not relieving Jennifer Moser, Plaintiff was on the schedule. Then after Plaintiff did not relieve Jennifer, Plaintiff was taken off the schedule and put on backup.

RESPONSE: Defendant Crisis Center, which understands the Plaintiff's reference to "the schedule" to refer to the Employee Schedule for the week of April 26-May 2, 2021, that attached to the Plaintiff's Second Amended Complaint at Exhibit B, pp. 41-42 (Doc. No. 30-2, pp. 44 and 45), denies the allegation(s) and/or averment(s) in paragraph 36 of the Plaintiff's Second Amended Complaint.

37.     From the time Plaintiff began employment dating back to 2019, the Crisis Center, Inc. had never had anyone on the schedule as a backup. A backup was never mentioned in the Crisis Center, Inc., "draft" employee handbook, not even under the Crisis Center, Inc.'s lay off policy or in the table of contents.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 37 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center incorporates its above responses to the substantially identical allegations in paragraphs 24 and 26.

38.     There was a Fact Finding conference held with Crisis Center, Inc., Plaintiff and EEOC. In attendance was Plaintiff, the Crisis Center, Inc., managers Felicia L. Evans and Athena Soleim. The EEOC Investigator J. Bennett asked the Crisis Center, Inc., manager Athena Soleim "where did backup come from"? The Crisis Center, Inc., manager Athena Soleim could not give an explanation as to where this backup came from, and the Crisis Center, Inc., manager Athena Soleim stated that "I was just trying something." At one point in the fact finding conference, the EEOC representative stated to the Crisis Center, Inc., manager Athena

Soleim, "You are sending up too many red flags." The Crisis Center, Inc. manager Felicia L. Evans stated that she never heard of back up.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 38 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that the EEOC representative made any comment about "red flags" in relation to the back-up-status experiment, (b) denies that Felicia Evans made any statement during the EEOC FFC intended to communicate that she was unaware that Defendant Crisis Center at times attempted to address staffing issues by designating particular part-time employees to cover work in the event of a call-off, which Defendant Crisis Center had attempted in the past using other terms and/or labels, and (c) otherwise incorporates its above response to the substantially identical allegation(s) in paragraph 27.

39.   The Crisis Center, Inc. manager Felicia L. Evans has been employed at Crisis Center for over 10 years. The Crisis Center, Inc., manager Felicia L. Evans also stated that when she does the schedule she give employees at least four hours' notice when asking an employee to come in.

RESPONSE: With regard to the allegation(s) in paragraph 39 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that it has employed Felicia Evans for more than ten years, and (b) denies that Felicia Evans stated that she gives employees "at least four hours' notice when asking an employee to call in[.]"

40.     The EEOC representative asked the Crisis Center, Inc. manager Athena Soleim, why did she call Plaintiff again; after Plaintiff stated she could not come in the first time? Crisis Center, Inc. manager Athena Soleim could give no answer.

RESPONSE: Defendant Crisis Center lacks sufficient knowledge and/or information and/or recollection of the EEOC FFC to form a belief as to the truth of the allegation(s) and/or averment(s) in paragraph 40 of the Plaintiff's Second Amended Complaint.


41.     Plaintiff has schedules dating back to 2019 when Plaintiff began employment with Crisis Center, Inc. In that time when census was up or down, there was never a backup status on the schedule.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 41 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that the Plaintiff possesses such Employee Schedules (which she, in fact, attached to her pleading), and (b) otherwise incorporates its above response to the substantially identical allegation(s) in paragraph 24.


42.     Prior to not relieving Jennifer Moser, Plaintiff was on the schedule. Then after Plaintiff did not relieve Jennifer, Plaintiff was taken off the schedule and put on backup.

RESPONSE: With regard to the duplicative allegation(s) and/or averment(s) in paragraph 42 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center incorporates its above response to the substantially identical paragraph 36.

43.     In April, 2021, Crisis Center, Inc. manager Athena Soleim blatantly retaliated against Plaintiff because Plaintiff did not relieve a white employee, Jennifer Moser and then Crisis Center, Inc. manager made a new schedule.

RESPONSE:  Defendant Crisis Center denies the factual allegation(s) and averment(s) in paragraph 43 of the Plaintiff's Second Amended Complaint.

44.     Plaintiff was also subjected to scrutiny after complaining on April 8, 2021 with a hand delivered letter about Crisis Center, Inc. manager Felicia L. Evans repeatedly putting Plaintiff on the schedule for excessive hours.

RESPONSE:  Defendant Crisis Center denies the factual allegation(s) and averment(s) in paragraph 44 of the Plaintiff's Second Amended Complaint.

45.     After Plaintiff questioned the backup status on the schedule April 25, 2021; on Monday, April 26, 2021 at 2:42 PM, the Crisis Center, Inc., manager Athena Soleim sent a new schedule to staff. On this schedule the Crisis Center, Inc. manager Athena Soleim had taken Plaintiff off of backup, and stated "See updated schedule. We welcome Mr. Anthony Pierce to the team and he is shadowing this week and Myles and Bryson back on. Thank you all!"

RESPONSE: Defendant Crisis Center admits the allegation(s) and/or averment(s) in paragraph 45 of the Plaintiff's Second Amended Complaint.

46.     The Crisis Center, Inc. management had sent out a notice just days before, prior to the new hire in which Crisis Center, Inc. manager Athena Soleim stated: "Please see

schedule for next week for the Crisis Center, Inc. Due to current census, our schedule reflects our current needs. Should we get more clients, we will be able to offer more shifts. Please note if you are back up, we may ask you to help out. We will do our best to notify asap so you can be prepared for that shift. Our needs fluctuate based on census." This message was also delivered via text message from Crisis Center, Inc. manager Athena Soleim.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 46 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center acknowledges that Athena Soleim communicated, in substance, the information the Plaintiff places in quotation marks in connection with the transmission of the original Employee Schedule for the Week of April 26-May 2, 2021, but cannot locate a copy of that particular transmission correspondence in the Plaintiff's voluminous attachments to her various pleadings in this case or otherwise and thus lacks sufficient knowledge and/or information to form a belief as to the allegations regarding the specific timing of that transmission or whether the purportedly quoted language is correctly recorded verbatim in this paragraph.

47.     Crisis Center, Inc. manager Athena Soleim stated: "Should we get more clients, we will be able to offer more shifts . . ." Then when Plaintiff questioned this retaliatory practice, Crisis Center, Inc. manager sent a new message naming a new employee (Anthony P.) hired in the midst of a low client census, and totally removing Plaintiff from the schedule. The new employee was assigned to Plaintiff's normal night hours as a shadow.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 47 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) incorporates its above response to paragraph 46 with regard to the purported quotation from Athena Soleim's

transmission correspondence, (b) lacks sufficient knowledge and/or information to form a belief as to the truth of whether the Plaintiff questioned some "practice," the intended meaning of which is unclear from context, but denies that any of its actions were taken in retaliation or that the Plaintiff contemporaneously questioned anything as "retaliatory," (c) lacks sufficient knowledge and/or information to form a belief as to whether a new part-time employee was hired "in the midst of a low client census," (d) admits that the revised/updated Employee Schedule removed the back-up-status assignments to which the Plaintiff had objected, and (d) denies that the Plaintiff had "normal night hours," but acknowledges that a new part-time employee was assigned to various shifts as a shadow as reflected on the revised/updated Employee Schedule.

48.     Plaintiff was female and this new hire was a male, and younger than Plaintiff.

RESPONSE: With regard to the allegation(s) and averment(s) in paragraph 48 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits that the Plaintiff is female and that Anthony Pierce, the part-time employee whose hire was announced in April 2021 was male and younger than the Plaintiff (although not sufficiently younger to give rise to any inferences the Plaintiff may wish to suggest).

49.     At the bottom of the schedule Crisis Center, Inc. manager Athena prepared it clearly stated: "If on backup we may ask that you arrive for the shift if we have a call off. Please contact Crisis Center, Inc. manager Athena or Shanta for clarification."

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 49 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that the original

Employee Schedule for the Week of August 26-May 2, 2021 (which is attached as Exhibit B, p. 41 [Doc. No. 30-2, p. 44] to the Plaintiff's Second Amended Complaint), which was prepared by Athena Soleim, contains the language in quotation marks.

50.     When Jennifer called Plaintiff and Crisis Center, Inc. manager Athena Soleim texted Plaintiff it was not a call off. This was to relieve Jennifer in the hospital, and that is a difference.

RESPONSE: Defendant Crisis Center denies the allegation(s) and/or averment(s) in paragraph 50 of the Plaintiff's Second Amended Complaint.

51.     Then Crisis Center, Inc. manager Athena Soleim retaliated and discriminated taking Plaintiff off of now a backup on the schedule, but put Myles and Bryson back on the schedule.  Both Bryson and Myles were part time workers as well. Plaintiff replied to the text Crisis Center, Inc. manager Athena Soleim sent, and stated:

"Let me understand. This. So you took me off the schedule and then put me on call with no notice given and days later you are announcing a new employee after you announced downsizing. Am I reading this right? Your explanation was the census. Again I am reading this right?"

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 51 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that Athena Soleim retaliated and discriminated against the Plaintiff by removing her back-up assignments on the revised schedule, (b) admits that part-time employees Myles and Bryson were added to shifts

on the revised/updated schedule, and (c) admits that the Plaintiff inappropriately replied to a group text with the quoted language.

52.    A "backup" classification on the schedule is noted nowhere in the Crisis Center, Inc. November 2020 Employee handbook. Layoffs and Recalls are noted, but nowhere is it noted through the Employee handbook that employees will be placed on backup. However, Crisis Center, Inc. manager Athena Soleim informed the EEOC that this new employee (Anthony P.) was full time as well, as the reason for taking the Plaintiff off the schedule in the midst of a low census.

RESPONSE: With regard to the allegation(s) and averment(s) in paragraph 52 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) incorporates its above responses to paragraphs 24 and 26 as to the duplicative allegations about back-up status and the Employee Handbook, and (b) denies that the part-time employee whose hiring was announced in April 2021 was a full-time employee or that anyone informed the EEOC that he was at the FFC.

53.    Shortly after Plaintiff's text message on the thread that Crisis Center, Inc. management Athena Soleim sent to all staff, Crisis Center, Inc. management Athena Soleim stated to Plaintiff that this wasn't the platform to discuss anything. Then afterwards, Crisis Center, Inc. management Athena Soleim stated that she took Plaintiff off the schedule because Plaintiff refused to sign the memo. However, Crisis Center, Inc. management Athena Soleim never arranged or sought to arrange a platform to talk with Plaintiff.

RESPONSE: With regard to the allegation(s) and/or averment(s) in paragraph 53 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that Athena Soleim communicated to the Plaintiff that a reply to the group text was not the appropriate platform in which to discuss the Plaintiff's concerns, (b) denies that Athena Soleim thereafter stated that "she took Plaintiff off the schedule because Plaintiff refused to sign the memo, and (c) denies that Athena Soleim never arranged or sought to arrange a platform to talk with Plaintiff, including, without limitation because Athena Soleim sent the Plaintiff an electronic-mail message on April 28, 2021 expressing a desire to "schedule a meeting to address [the Plaintiff's] concerns" and asking the Plaintiff to "[l]et me know your availability and I will see what I have open" – to which the Plaintiff did not reply.


54.     Days before Crisis Center, Inc. management Athena Soleim stated because of the census Plaintiff was being made a backup, then when Plaintiff was not able to come in to relieve a white employee, and this was not to replace a call off as stated on the schedule for backups. Then Crisis Center, Inc. management Athena Soleim stated that she hired a person. Not to mention the same census was low, and had blatantly taken Plaintiff off the schedule as retaliation and discrimination. Then Crisis Center, Inc. management Athena put Myles and Bryson back on the schedule, and they were part time as well.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 54 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) denies that Athena Soleim "stated because of the census Plaintiff was being made a backup, (b) lacks sufficient knowledge or information to form a belief as to the truth of whether Plaintiff "was not able to come in to relieve a white employee," (c) denies that the request that Plaintiff relieve

Jennifer Moser at the hospital was or should have been exceptional, unexpected, or unanticipated given the Plaintiff's designated back-up status for the date in question, (d) admits that on or about the afternoon of April 26, 2021, Athena Soleim announced the hiring of part-time employee Anthony Pierce, (e) observes that "not to mention" is apparently meaningless to the Plaintiff because she proceeds to mention things anyway and denies the suggestion that the census was unchanged, and (f) incorporates its above response to paragraph 51 with regard to the duplicative contentions regarding Myles and Bryson.

55.     Crisis Center, Inc. management Athena Soleim stated to Plaintiff that she had sent Plaintiff an email, and she was wondering why Plaintiff didn't respond, and Plaintiff told Crisis Center, Inc. management Athena Soleim that Plaintiff didn't see it. Crisis Center, Inc. management Athena Soleim went on to say that now Plaintiff was not on the schedule because Plaintiff did not sign a memo of which the memo was signed and sent back to Crisis Center, Inc. and Plaintiff was still not put on the schedule.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 55 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits only that there was a conversation between Athena Soleim and the Plaintiff in which the Plaintiff claimed that she had not seen an electronic-mail message that Athena Soleim had sent her regarding a memorandum that the Plaintiff had actively refused to sign on April 14, 2021, (b) denies that Athena Soleim "went on to say that now Plaintiff was not on the schedule because Plaintiff did not sign a memo[,]" (c) admits that the Plaintiff subsequently signed and returned the memorandum in mid-May, 2021, and (d) admits that the Plaintiff was not placed upon the schedule after her execution of the mandatory memorandum, which should not surprise the

Plaintiff because she was advised by Athena Soleim on May 18, 2021 that "[r]egarding you returning to work, please contact [Human Resources employee] Meara to schedule a time to see the HR videos. We also need a valid, current food handler's card and then we can schedule you when needed moving forward" and never responded, reviewed the required videos, or provided a valid, current food handler's card.

56.     Ironically, the email Crisis Center, Inc. management Athena Soleim referred to was dated April 23, 2021, but on April 25, 2021 Crisis Center, Inc. management Athena Soleim wanted Plaintiff to come in for Jennifer. There was no mention from Crisis Center, Inc. management Athena Soleim of not signing a memo on that date.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 56 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) observes that the Plaintiff's comprehension of irony is limited at best, (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the allegations regarding Athena's reference to an April 23, 2021 email, including, without limitation, because the communication or conversation to which the Plaintiff intends to refer is unclear, (c) admits that, on April 25, 2021, Athena Soleim wanted the Plaintiff to relieve another employee and did not, at that time, address any concerns regarding the Plaintiff's refusal to sign the mandatory memorandum.

57.     Initially, on 4/14/21, Plaintiff refused to sign the memo, as Plaintiff had done nothing wrong, and then it stated "by signing this, you agree to the policy and have been issued a warning." However, when Crisis Center, Inc. wanted Plaintiff to come in for Jennifer weeks later, not signing the memo wasn't an issue. As a matter of fact, Crisis Center, Inc. had taken

Plaintiff off the schedule, and then wanted to explain the memo, as well as stating it was a requirement. The memo was dated March 31, 2021.

RESPONSE:  With regard to the factual allegation(s) and/or averment(s) in paragraph 57 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that the memorandum that the Plaintiff refused to sign was dated March 31, 2021 and contained the language "by signing this, you agree to the policy and have been issued a warning[,]" (b) admits that the Plaintiff initially refused to sign that memorandum on April 14, 2021, (c) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's explanation and/or justification for her refusal to sign the memorandum, (d) incorporates its response to paragraph 56 to the duplicative contentions regarding the Plaintiff's attempt to link the memorandum to the April 25, 2021 communications and conversations regarding her unwillingness to relieve Jennifer Moser, (e) lacks sufficient knowledge and/or information to form a belief as to the truth of the contention that "[a]s a matter of fact, Crisis Center, Inc. had taken Plaintiff off the schedule, and then wanted to explain the memo, as well as stating it was a requirement[,]" which is functionally word salad.

58.     Crisis Center, Inc. management Athena Soleim has a history of treating whites differently from blacks, and this treatment has played out among the client base of blacks and whites as well. A black client became very aggressive and fought Crisis Center, Inc. management Athena Soleim. This child client tore up Crisis Center, Inc. Athena Soleim's office, because the client did not like the disrespectful, degrading tone Crisis Center, Inc. management Athena Soleim was using toward a Black male employee, a/k/a Anthony. That client who fought Crisis Center, Inc. management Athena Soleim was enraged and stated to

Crisis Center, Inc. management Athena Soleim that "you should not be talking to Mr. Anthony like that in front of everyone." Many clients have accused Crisis Center, Inc. management Athena Soleim of being prejudiced and/or racist. Staff has made accusation of Crisis Center, Inc. management Athena Soleim's prejudice. Crisis Center, Inc. management Athena talked to blacks any kind of way, oftimes [sic] degrading.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 58, Defendant Crisis Center (a) denies even the suggestion that Athena Soleim has a history of racial discrimination or that she communicates or has communicated in a degrading way to racial minorities, including, without limitation "Mr. Anthony[,]" (b) admits that a small number of clients and/or staff have made frivolous allegations of prejudice – akin to the Plaintiff's own lawsuit – none of which have been found to have any merit, and (c) denies Plaintiff's erroneous characterization of the events preceding a previous incident in which an African-American female client vandalized Athena Soleim's property, which, by the client's own admissions, was a reaction to Athena Soleim's confiscation of contraband.


59.    In another instance, a black male client, was called all kinds of "niggas" by a white girl client. The white girl client hit the black male over, and over, and over, and over again and just repeatedly kept striking him. He tried resisting her, and she hit him again, and the white client called the black male client all kinds of "niggas". After too many blows by the white client, the black male defended himself, and hit the white client repeatedly. The Black juvenile male was sent to jail and could have faced a felony. However, Crisis Center, Inc. management Athena Soleim never showed the video tape of what the white girl did not the black male. The white girl was still at the Crisis Center, Inc. The staff had to put her in

protective custody in the boys [sic] unit, because the African American clients were enraged with her calling blacks "niggas". The white client beat the hell out of that black male child. The white girl could not go to the girls unit because those black girls were angry and infuriated with what the white female client did to the black make client who was taken away to juvenile jail.  Had it been a white male client, it would have registered as self-defense. Crisis Center, Inc. management Athena Soleim never showed or offered to show the police a video showing the white girl provoking and hitting the black boy repeatedly.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 59 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits only that, there was an incident in which a Caucasian female client was the aggressor in a physical confrontation with an African-American male client in which the African-American male client was taken to the juvenile detention center by law enforcement, (b) denies the Plaintiff's flatly erroneous contention that Athena Soleim "never showed or offered to show the police a video showing the white [female client] provoking and hitting the black boy repeatedly[,]" which surveillance video Athena Soleim most certainly did produce to law enforcement in connection with her advocacy on the African-American male client's behalf, which ultimately resulted in his release from custody, (c) denies the insinuation that it or Athena Soleim would have taken different action if one of the parties had a different racial identity.


60.     In another instance, a black female client hit a white staff member (Jennifer Moser), and was sent to jail after Jennifer pressed charges. On the other hand, Black employees have been beaten, bitten, hit and Blacks were told they could not press charges against clients.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 60 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that an incident occurred in which an African-American female client assaulted staff member Jennifer Moser and was taken into custody by law enforcement, but (b) denies the contention that African-American staff who were similarly assaulted by client were instructed "they could not press charges," which is entirely inaccurate.

61.     In April 2021, Plaintiff told Crisis Center, Inc. management Athena Soleim that an employee that worked on the night shift with Plaintiff was sleeping and Plaintiff was doing all the work. Crisis Center, Inc. management Athena Soleim stated that she knew it, and who it was. Ironically, Lynda Woods Brown Allen, Residential staff and (a close friend of Crisis Center, Inc. management Felicia L. Evans) had reported to Crisis Center, Inc. management Felicia L. Evans that Ms. Eundee sleeps all time as well. Lynda Woods Brown Allen went on to tell Plaintiff that they had watched the videos; (Crisis Center, Inc. management and Lynda Woods Brown Allen, Residential staff) and they only see Plaintiff moving around and doing the work.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 61 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits only that the Plaintiff reported to Athena Soleim in April 2021 that a night-shift co-worker was sleeping during their shift and Athena Soleim reviewed surveillance video that suggested the Plaintiff's account may be accurate, but (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's allegations about what transpired in conversations between the Plaintiff and Lynda Woods Brown Allen.

62.     Over time, Lynda Woods Brown Allen would herself state to Plaintiff at various times that Ms. Eundee was sleeping, and she could see it on the camera from the boy's [sic] side. Lynda Woods Brown Allen stated to Plaintiff on various occasions that Ms. Eundee just sleeps.

RESPONSE: Defendant Crisis Center lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's allegations about what Lynda Woods Brown Allen may or may not have stated to the Plaintiff.


63.     All African Americans worked on the night shift, and after Crisis Center, Inc. management Athena Soleim hired a white day time custodian who was Crisis Center, Inc. management Athena Soleim's personal house custodian then Crisis Center, Inc. management Athena Soleim sent out memos that midnight shift is ordered to clean up. This is in addition to night shifts [sic] regular monitoring duties. Plaintiff refused to sign the memo as it was a verbal warning because Plaintiff had not done anything.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 63 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's contention that "[a]] African Americans worked on the night shift," including without limitation because the Plaintiff specifies no timeframe applicable to that assertion, but acknowledges that its night-shift(s) Residential Staff was often comprised entirely of African African staff, who were drawn from an overall substantially African-American-majority staff, (b) incorporates its above answer to paragraph 57 in regard to the duplicative contentions regarding the Plaintiff's

36

refusal to sign a memorandum and her purported reasons/justifications for same, and (c) denies the remainder of the allegations, including, without limitation, because Defendant Crisis Center never hired any custodian who was currently or had previously performed any household cleaning work for Athena Soleim.

64.     In the Crisis Center, Inc. Employee handbook under Disciplinary Action it states the procedures for verbal is not sending a memo and forcing employees to sign the memo or be removed from the schedule. Crisis Center, Inc. management Athena Soleim personal white custodian who worked for Crisis Center, Inc. management Athena Soleim at her home, and was hired as a custodian for Crisis Center, Inc. Mind you, Crisis Center, Inc. is a 24/7 facility, Athena Soleim's custodian only worked days. On the other hand, there was black custodian (Carolyn) and when Carolyn worked there the midnight staff was never ordered to clean up. Plaintiff signed the memo and emailed it back to Crisis Center, Inc. and Plaintiff was not put back on the schedule.

RESPONSE: With regard to the particularly rambling and disconnected factual allegation(s) and/or averment(s) in paragraph 64 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits only that its Employee Handbook contains Disciplinary Action provisions, (b) denies that the acknowledgement and warning language in the memorandum that the Plaintiff refused to sign were inconsistent with those Disciplinary Action Provisions, (c) incorporates its above response to paragraph 64 with regard to the duplicative, based-on-entirely-inaccurate-information allegations regarding alleged changes in policy following the hiring of a "personal white custodian who worked for Crisis Center, Inc. management Athena Soleim at her home, (d) admits that it employed a custodian named

Carolyn who was African-American, and (e) again incorporates its above response to paragraph 57 as to the duplicative allegations about the Plaintiff's refusal to sign that memorandum and her reasons/justifications for that refusal.

65.     When Plaintiff told Crisis Center, Inc. management Athena Soleim that an employee (Ms. Eundee) was sleeping, Plaintiff asked Crisis Center, Inc. management Athena Soleim to keep it confidential, however Crisis Center, Inc. management Athena Soleim said she already knew, and had watched the videos. Plaintiff did not take a photo of Ms. Eundee. Plaintiff took a photo of the mirror where you could see the reflection of Ms. Eundee. Plaintiff never sent or showed a picture to Crisis Center, Inc. management Athena Soleim. Plaintiff asked Crisis Center, Inc. management Athena Soleim to keep it confidential about Plaintiff reporting an employee sleeping, and Crisis Center, Inc. management Athena Soleim said she would keep it confidential. Plaintiff told Crisis Center, Inc. management Athena Soleim that she did not want a backlash for revealing the truth or how unfair this was. Crisis Center, Inc. management Athena Soleim assured Plaintiff that she would keep it confidential.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 65 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center (a) admits that the Plaintiff requested that Athena Soleim keep confidential her report regarding a night-shift co-worker's on-the-job sleeping and that Athena Soleim agreed to do so, (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's allegation that she did not "take a picture of" that employee, although, having some significant experience with dealing with at-risk youth, some of whom have issues with truth-telling, will remain deeply suspicious of the explanation that the Plaintiff actually only "took a photo of the mirror

where you could see the reflection of" the co-worker unless and until the Plaintiff produces some coherent excuse for why she was photographing a mirror, (c) admits that the Plaintiff never produced any photograph to Athena Soleim.

66.     Crisis Center, Inc. management Athena Soleim and Lynda Woods Brown Allen, Residential staff created a hostile work environment for Plaintiff.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 66 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center denies the factual allegation(s) and averment(s) in paragraph 66 of the Plaintiff's Second Amended Complaint.

67.     On Monday, April 26, 2021, Lynda Woods Brown Allen, who is a friend and confidant to Crisis Center, Inc. management Felicia L. Evans called Plaintiff on Plaintiff's personal phone with a demeaning, harassing, intimidating message, that turned into text messaging, and Lynda Woods Brown Allen stated:

> "You are lowdown. You are lowdown. I did not know you were that lowdown. You took a picture of Ms. Eundee. You are lowdown.  Then Lynda Woods Brown Allen hung up the phone.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 67 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless (a) admits, on information and belief, only that Felicia

Evans and Lynda Woods Brown Allen are friends – as, at one time, were the Plaintiff and Lynda Woods Brown Allen, and (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the factual allegation(s) and/or averment(s) in paragraph 67 except for those that purport to quote from text-message exchange(s) the Plaintiff filed with her Second Amended Complaint, as to which Defendant Crisis Center defers to the messages themselves.

68.     Plaintiff began to text Lynda Woods Brown Allen back after this blatant harassment, bullying and intimidation. Lynda Woods Brown Allen was very hostile, harassing and intimidating to Plaintiff, and Plaintiff lashed back at Lynda after all the bible thumping ridicule.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 68 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless lacks sufficient knowledge and/or information to form a belief as to the truth of the factual allegation(s) and/or averment(s) in paragraph 68.

69.     Lynda Woods Brown Allen stated: "The video will show it was YOU. Help her Lord." Lynda's statement was referring to Plaintiff taking pictures of a mirror that reflected Ms. Eundee.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 69 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless lacks sufficient knowledge and/or information to form a

belief as to the truth of the factual allegation(s) and/or averment(s) in paragraph 69 except for those that purport to quote from text-message exchange(s) the Plaintiff filed with her Second Amended Complaint, as to which Defendant Crisis Center defers to the messages themselves.

70.    Lynda Woods Brown Allen went on to slander Plaintiff and stated: "Blessed her Lord, she has nobody." Lynda Woods Brown Allen went on to slander Plaintiff's relationship with Plaintiff's son, and a relationship Plaintiff had with a coworker. Lynda Woods Brown Allen knew nothing about Plaintiff's personal life based on facts.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 70 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless lacks sufficient knowledge and/or information to form a belief as to the truth of the factual allegation(s) and/or averment(s) in paragraph 70 except for those that purport to quote from text-message exchange(s) the Plaintiff filed with her Second Amended Complaint, as to which Defendant Crisis Center defers to the messages themselves.

71.    Lynda Woods Brown Allen was a residential staff worker, and because she is a personal friend to Crisis Center, Inc. management Felicia L. Evans, Lynda Woods Brown Allen was privy to confidential information, through Crisis Center, Inc. management Felicia L. Evans and Athena Soleim.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 71 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however,

Defendant Crisis Center nevertheless (a) incorporates its above response to paragraph 67 in regard to the Plaintiff's allegations regarding the friendship between Felicia Evans and Lynda Woods Brown Allen, and (b) denies that Lynda Woods Brown Allen became aware of the Plaintiff's reporting of a night-shift co-worker's on-the-job sleeping from a breach of confidentiality on the part of Athena Soleim or other management.

72.     Crisis Center, Inc. management Athena Soleim broke confidentiality and created a hostile work environment. Ironically, Plaintiff told Crisis Center, Inc. management Athena Soleim that Plaintiff had a picture, but Plaintiff took a picture of the mirror that reflected Ms. Eundee, not Ms. Eundee, and Plaintiff never sent it or showed it to Crisis Center, Inc. management Athena Soleim.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 67 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless denies that Athena Soleim broke confidentiality and created a hostile workplace and, to the extent that the remainder of paragraph 72 of the Plaintiff's Second Amended Complaint states anything coherent at all, incorporates its above response to the apparently duplicative allegations in paragraph 65.

73.     Lynda Wood Brown Allen stated too in various conversations with and to Plaintiff that she herself had reported to Crisis Center, Inc. management Felicia L. Evans that Ms. Eundee is always sleeping. Lynda Woods Brown Allen stated to Plaintiff that Crisis Center, Inc. managements Felicia Athena Soleim had saw Ms. Eundee on the video sleep.

Plaintiff never took any pictures of Ms. Sally, and never reported that to Crisis Center, Inc. management Athena Soleim. Totally slanderous and hostile.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 73 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless (a) lacks sufficient knowledge and/or information to form a belief as to the truth of the factual allegation(s) and/or averment(s) in paragraph 73 regarding apparently oral communications between the Plaintiff and Lynda Woods Brown Allen and (b) notwithstanding the absence of a verb in the final sentence, which leaves the intended meaning of those allegation(s) at best unclear and closer to indeterminate, denies that the Plaintiff's spat with a co-worker created or constituted a hostile workplace.


74.    After Plaintiff reported the harassment on April 26, 2021 to Crisis Center, Inc. management Athena Soleim stated that we could schedule a meeting to address Plaintiff's concerns of a hostile work environment and harassment. Crisis Center, Inc. management Athena Soleim was never able to schedule a meeting to address harassment and/or a hostile work environment. When Plaintiff asked to view the video Lynda Woods Brown Allen talked about to Crisis Center, Inc. management Athena Soleim. stated there was no video footage.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 74 do not appear to relate to any cognizable claim the Plaintiff asserts. Defendant Crisis Center nevertheless (a) incorporates its response to paragraph 53 as to the duplicative, false assertions regarding the non-occurrence of a meeting between the Plaintiff and Athena Soleim, and (b) denies the

remaining allegations as worded because it misstates what Athena Soleim informed the Plaintiff regarding video footage in her May 18, 2021 electronic-mail correspondence.

75.     Lynda Woods Brown Allen's conduct was unwelcomed. It also affected the terms or conditions of employment; and it was imputed to the Crisis Center, Inc. Crisis Center, Inc. management Athena Soleim knew about the harassment and hostile work environment and did nothing about it, and did nothing to prevent it.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 75 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however, Defendant Crisis Center nevertheless (a) denies the allegations that Linda Woods Brown Allen's alleged conduct was or should be imputed to Defendant Crisis Center and the allegation that Athena Soleim knew about the harassment and hostile work environment and did nothing about it, including nothing to prevent it and (b) lacks sufficient knowledge and/or information to form a belief as to the truth of the remaining factual allegation(s) and/or averment(s) in paragraph 75.

76.     Following telling Crisis Center, Inc. management Athena Soleim about harassment, Plaintiff received an email from Crisis Center, Inc. management Athena Soleim. Plaintiff was retaliated against, and completely taken off the schedule in April, 2021

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, the factual allegation(s) and/or averment(s) in paragraph 76 do not appear to relate to any cognizable claim the Plaintiff asserts. In an abundance of caution, however,

Defendant Crisis Center nevertheless (a) lacks sufficient knowledge and/or information to form a belief as to the truth of the Plaintiff's allegation that she received electronic-mail correspondence from Athena Soleim "[f]ollowing telling Crisis Center management Athena Soleim about harassment," including, without limitation because the Plaintiff provides no temporal context for her alleged harassment complaint, but acknowledges that Athena Soleim emailed her on April 28, 2021 to attempt to schedule a time to discuss her concerns and and May 18, 2021 to advise the Plaintiff of the human-resources requirements she needed to complete before she could return to the schedule, if either or both of those emails was after the alleged harassment complaint, and (b) denies the remaining allegation(s) and/or averment(s) in paragraph 76.

## COUNT I: AGE DISCRIMINATION

77.     Plaintiff incorporates by reference to the facts alleged in paragraphs 1-76.

<u>RESPONSE</u>: Defendant Crisis Center reciprocally incorporates its responses to the factual allegations and/or averments in paragraphs 1-76.

78.     Plaintiff is a member of a protected class as Plaintiff is a Black, African American Women [sic] who is over 50, and disabled.

<u>RESPONSE</u>: Defendant Crisis Center admits only that Plaintiff is a black, African-American woman over age 50, but lacks sufficient knowledge and/or information to form a belief as to the remaining factual allegation(s) and/or averment(s) in paragraph 78 of the Plaintiff's Second Amended Complaint.

79.     Plaintiff qualified for the job and met all the stated criteria for employment.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 79 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that the Plaintiff appeared to be qualified for the position for which she had been hired up to the point when she failed to renew her human-resources training and produced a valid food-handling permit.

80.     Plaintiff was performing competently.

RESPONSE: With regard to the factual allegation(s) and/or averment(s) in paragraph 80 of the Plaintiff's Second Amended Complaint, Defendant Crisis Center admits only that the Plaintiff was performing at an acceptable level of competence as of the last shift she worked the week ending April 25, 2021.

81.     Plaintiff was taken off the schedule and eliminated in spite of meeting the employer standards.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averments in paragraph 81 of the Plaintiff's Second Amended Complaint.

82.     Plaintiff was retaliated against and abruptly taken off the schedule and/or terminated, and replaced by a younger, male worker.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 82 of the Plaintiff's Second Amended Complaint.

83.    An individual from outside Plaintiff's legally protected status, i.e., a younger male worker was hired for the hours and A shift Plaintiff normally worked, and Plaintiff was removed and/or terminated from the schedule.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 83 of the Plaintiff's Second Amended Complaint.

84.    A link exists between the adverse job action and the protected activity in which Plaintiff engaged.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 84 of the Plaintiff's Second Amended Complaint.

COUNT II: RETALIATION

85.    Plaintiff incorporates by reference to the facts alleged in paragraph 1-76.

RESPONSE: Defendant Crisis Center reciprocally incorporates its responses to the factual allegations and/or averments in paragraphs 1-76.

86.    Plaintiff took part in protected activity and reported harassment, retaliation, hostile work environment and discrimination.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 86 of the Plaintiff's Second Amended Complaint.

87.    Crisis Center, Inc. management took adverse action against Plaintiff for standing up against, harassment, hostile work environment, retaliation and discrimination, and

as a result was treated with hostility, retaliated and harassed and afterward was taken off the schedule and/or terminated.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 87 of the Plaintiff's Second Amended Complaint.

88.   Plaintiff was retaliated against and abruptly taken off the schedule and/or terminated and replaced by a younger male worker.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 88 of the Plaintiff's Second Amended Complaint.

89.   A link exists between the adverse job action and the protected activity in which Plaintiff engaged.

RESPONSE: Defendant Crisis Center denies the factual allegation(s) and/or averment(s) in paragraph 89 of the Plaintiff's Second Amended Complaint.

COUNT III: HARRASSMENT

90.   Plaintiff incorporates by reference to the facts alleged in paragraph 1-76.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, paragraph 90 does not relate to any cognizable claim. In an abundance of caution, however, Defendant Crisis Center reciprocally incorporates its responses to the factual allegations and/or averments in paragraphs 1-76.

91.     Lynda Brown Allen, Residential Staff made belittling comments that were not true, and ridiculed Plaintiff Lynda Brown Allen created a hostile environment, and harassed Plaintiff, along with Crisis Center, Inc., Management, Athena Soleim. While the harassment did not directly result in disciple [sic], however plaintiff suffered lost opportunities and was terminated by being eliminated from the schedule.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, paragraph 90 does not relate to any cognizable claim.

92.     Crisis Center, Inc. management Athena Soleim, never addressed the harassment. Crisis Center, Inc. management Athena Soleim merely took Plaintiff off the scheduled [sic] and/or terminated Plaintiff.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, paragraph 90 does not relate to any cognizable claim.

COUNT IV: HOSTILE WORK ENVIRONMENT

93.     Plaintiff incorporate by reference to the facts alleged in paragraphs 1-76

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, paragraph 93 does not relate to any cognizable claim. In an abundance of caution, however, Defendant Crisis Center reciprocally incorporates its responses to the factual allegations and/or averments in paragraphs 1-76.

94.    Lynda Brown Allen made belittling comments that were not true, to Plaintiff. While the harassment did not directly result in discipline, however plaintiff suffered lost opportunities and was terminated by being eliminated from the schedule.

RESPONSE: Per the Court's August 11, 2022 *Opinion and Order* that dismissed Counts III and IV, paragraph 90 does not relate to any cognizable claim.

COUNT VI [sic]: RELIEF

Plaintiff Versie C. McClay Chatman respectfully asks the Court to order the Crisis Center, Inc. to pay Plaintiff $2,000,000.00, (Two million dollars) and the respective court fees and costs.

RESPONSE: Defendant Crisis Center incorporates its below prayer for relief.

**AFFIRMATIVE DEFENSES**

Defendant Crisis Center, by and through its undersigned counsel, contends that the Plaintiff's Second Amended Complaint, in whole or in part, fails to state a claim upon which the Court can grant it relief, denies any factual allegation(s) and/or averment(s) in the Plaintiff's Second Amended Complaint that it has not specifically admitted, controverted, or denied previously in this Answer, and asserts the following Affirmative Defenses to the Plaintiff's Complaint:

1.    The Plaintiff may have failed to mitigate her damages.

2.    To the extent that the Plaintiff's employment-discrimination claims challenge Defendant Crisis Center's workplace policies, those policies are related and necessary to successful job performance.

3.      Defendant Crisis Center reserves the right to seek the Court's leave to asset such additional defenses as may come to light during the pendency of this action and/or that may appear appropriate upon completion of its investigation and discovery.

**WHEREFORE**, Defendant Crisis Center respectfully requests that the Plaintiff's Complaint be dismissed with prejudice and that it be awarded all reasonable costs incurred in the defense of this action, an attorneys'-fee award to the extent that the litigation establishes that the Plaintiff's claim(s) are frivolous, unreasonable, or groundless. Plaintiff's bringing and/or continued litigation of claims against the Defendant was unreasonable and/or groundless, and all such other just and proper relief, legal and/or equitable, to which it may be entitled.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Defendant Crisis Center hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Trevor W. Wells*
Trevor W. Wells (#31156-64)
**REMINGER CO., L.P.A.**
2901 Carlson Drive, Suite 311
Hammond, IN 46323
(219) 663-3011
(219) 663-1049 (fax)
twells@reminger.com
*Counsel for the Defendant,*
*Crisis Center, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 4, 2022, the ECF Notice of Filing of this document was forwarded to the self-represented Plaintiff by electronic mail and that on September 6, 2022 (the next following working day with U.S. Mail service), a true and complete copy of the above and foregoing was served in accordance with Fed.R.Civ.P. 5, pursuant to the district court's ECF system as any ECF filers, and via First-Class U.S. Mail (both regular and Certified Mail, return-receipt requested) to the self-represented Plaintiff.

Versie C. McClay Chatman
4406 Broadway
Gary, Indiana 46408
*Self-Represented Plaintiff*

*/s/ Trevor W. Wells*
Trevor W. Wells (#31156-64)
**REMINGER CO., L.P.A.**